United States District Court
Middle District of Florida
Ft. Myers Division

**PHILLIP JOHNSON,**

  *Plaintiff,*

v.   NO. **2:22-cv-521-SPC-PDB**

**ACTING COMMISSIONER OF SOCIAL
SECURITY,**

  *Defendant.*

---

## Report and Recommendation

Phillip Johnson challenges a final decision of the Acting Commissioner of Social Security denying his application for supplemental security income. Doc. 1. The decision is by an administrative law judge (ALJ). Tr. 29–49. The Acting Commissioner has filed a 737-page record, Doc. 14 (Tr. 1–737), and each side has filed briefs, Docs. 17, 18, 19. The Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c).

Johnson argues substantial evidence does not support the residual functional capacity (RFC) findings, the ALJ erred by failing to develop the record, and the Appeals Council erred by failing to consider post-hearing treatment. Doc. 17 at 3–4, 11–22; Doc. 19 at 1–10. The ALJ argues there is no error. Doc. 18 at 6–18. Johnson raises additional arguments in the reply brief. Doc. 19.

## I.    Background

Johnson was born in 1975. Tr. 266. He worked in landscaping, staffing, roofing, and the food-service industry. Tr. 279–81. He applied for supplemental security income on August 17, 2020, alleging he had become disabled from esophagus achalasia[1] on April 1, 2019. Tr. 266–72, 289.

The ALJ conducted a hearing on November 3, 2021. Tr. 71–94. Johnson testified he suffers achalasia, he was hospitalized twice because he could not eat, his treatment included a balloon dilation and Botox injection in his throat, he vomits twenty to twenty-five times a day, he vomits if he sleeps on his back or stomach, he has lost approximately thirty pounds, the vomiting causes dehydration, and his throat is constantly sore. Tr. 80–82. A vocational expert (VE) also testified. Tr. 85–94.

After the hearing, Johnson submitted additional evidence. Tr. 50–70. The evidence includes treatment records showing complications with achalasia and lung disorders, but also showing a mostly normal review of systems and physical examination, a normal range of motion, normal pulmonary effort, no acute distress, a lack of significant abnormalities, and no appearance of dyspnea. Tr. 55–70.

Johnson proceeded through the administrative process, failing at each level. Tr. 1–6, 111, 112, 29–49. This action followed. Doc. 1.

---

[1]Esophagus achalasia is a neurogenic disorder "characterized by involuntary constriction and relaxation of the muscles of the esophagus, creating wave-like movements that push the contents of the canal forward and … a lack of lower esophageal sphincter relaxation during swallowing." Doc. 17 at 4 (internal citations omitted). Symptoms include vomiting and difficulty swallowing. Doc. 17 at 4.

In the scheduling order, the Court advised, "Unless the fair and impartial administration of justice requires otherwise, conclusory statements or arguments may be disregarded and rejected by the court." Doc. 10 at 4. The Court added that Johnson "may not use a reply brief to introduce or expand upon a previously undeveloped contention or raise another question for resolution. Nor may a reply be used to reiterate or restate points previously advanced. The reply is limited to arguments about how [the Acting Commissioner's] points might fall short factually, legally, or logically." Doc. 10 at 5.

## II.   ALJ's Decision and Appeals Council's Denial of Review

In the decision under review, the ALJ proceeded through the five-step sequential process.[2]

At step one, the ALJ found Johnson has not engaged in substantial gainful activity since August 17, 2020 (the application date). Tr. 34.

At step two, the ALJ found Johnson has severe impairments of esophagus achalasia with vomiting, weight loss, dehydration, and pain;

---

[2]To decide whether a person is disabled, the Social Security Administration uses a five-step sequential process. 20 C.F.R. § 416.920(a)(4). At step one, the ALJ asks whether the claimant is engaged in "substantial gainful activity." *Id.* At step two, the ALJ asks whether the claimant has a severe impairment or combination of impairments. *Id.* At step three, the ALJ asks whether the claimant has an impairment or combination of impairments meeting or medically equaling the severity of anything in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* At step four, the ALJ asks whether the claimant can perform any of his "past relevant work" considering his RFC. *Id.* And at step five, the ALJ asks whether the claimant can perform other jobs considering his RFC, age, education, and work experience. *Id.* If the ALJ finds disability or no disability at a step, the ALJ will "not go on to the next step." *Id.*

chronic obstructive pulmonary disease (COPD); and disorders of the left arm and hand. Tr. 35.

The ALJ also found Johnson has non-severe impairments of "acute kidney injury/failure" and depression. Tr. 35. He found the kidney impairment is non-severe because it "did not exist for a continuous period of twelve months; was responsive to medication; is accommodated by the determined [RFC]; did not require significant medical treatment; or did not result in any continuous exertional or non-exertional functional limitations." Tr. 35.

The ALJ found Johnson's depression is non-severe because it "does not cause more than minimal limitation in [his] ability to perform basic mental work activities[.]" Tr. 35. He specifically considered the record evidence:

> [Johnson] reported depression, but denied formal mental health treatment (testimony). Emergency room records from March 15, 2019 were negative for complaints of anxiety/depression, and [Johnson] exhibited an appropriate affect (Exhibit 3F/7). Mental status examination completed during a consultative examination with Michael Rosenberg, M.D., in September 2019 was within normal limits, without evidence of impaired eye contact, orientation, judgment, memory, affect, or interaction (Exhibit 7F/4). When seen by James Belcher, M.D. in June 2020, [Johnson] denied psychiatric/behavioral complaints. Objectively, [Johnson] was alert with normal mood (Exhibit 9F/6). P.A., Karen Mikol, evaluated [Johnson] in September 2020 and found normal mood, affect, behavior (Exhibit 10F/9). During annual physical examination with Gianinna Folgarait, M.D., in July 2021, [Johnson] alleged depression but indicated he was never treated. He denied suicidal/homicidal ideations. He stated his depression is mostly due to him not being able to eat due to his GI issues (Exhibit 15F/4). Psychiatric screening showed normal appearance, euthymic mood and normal affect (Exhibit 15F/7). Diagnoses included a major depressive disorder, single episode, unspecified and [Johnson] was referred to psychiatry (Exhibit 15F/9). However, there is no indication he followed up with the referral.

Tr. 35.

The ALJ considered the "areas of mental functioning set out in the disability regulations for evaluating mental disorders[.]" Tr. 35–36. In the area of understanding, remembering, or applying information, the ALJ found Johnson has a mild limitation. Tr. 35. The ALJ explained:

> There is no history [of] special education and [Johnson] is more than capable. There is no indication [he] had difficulty following the topic of conversation during his hearing or during examinations. He is able to perform personal care independently, prepare simple meals, use a microwave, complete simple chores, do light loads of laundry and light shopping, but may need some assistance secondary to his physical impairments (Exhibits 4E, 7F, 14F). Mental status examinations and psychiatric screenings showed deficits in orientation or memory.

Tr. 35–36. In the area of interacting with others, the ALJ found Johnson has a mild limitation. The ALJ explained:

> [Johnson] had no difficulty interacting at his hearing or during examinations, and answered all questions asked of him without incident.  There is no indication he does not maintain good family relationship, or that he has difficulty socializing or being in crowds. He asserted that he shops for groceries, provided that he is driven to the store (Exhibit 14F).

Tr. 36. In the area of concentrating, persisting, or maintaining pace, the ALJ found Johnson has a mild limitation. Tr. 36. The ALJ explained:

> There is no indication [Johnson] had difficulty following the topic of conversation during his hearing or during examinations.  No deficits with concentration, persistence or pace were noted during mental status examinations and psychiatric screenings. There is no indication [Johnson] was unable to pay attention, complete tasks, or follow written and spoken instructions.

Tr. 36. In the area of adapting or managing oneself, the ALJ found Johnson has a mild limitation. Tr. 36. The ALJ explained:

> There is no history of partial, inpatient or outpatient mental health treatment. There is no history of convincing psychotic symptoms. No deficits were found during mental status examinations or psychiatric screenings. There was no indication that [Johnson] had difficulty following the topic of conversation or interacting with examiners … during his hearing. There is no indication [he] was responding to internal stimuli; that he experienced recurrent suicidal or homicidal ideations; or that he experienced repeated flashbacks. He is able to perform personal care independently, prepare simple meals, use a microwave, complete simple chores, do light loads of laundry and light shopping, but may need some assistance secondary to his physical impairments (Exhibits 4E, 7F, 14F).

Tr. 36.

At step three, the ALJ found Johnson has no impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 37. The ALJ specifically considered Listing 1.18, pertaining to abnormality of a major joint in any extremity; Listing 3.02, pertaining to chronic respiratory disorders; and Listing 5.08, pertaining to weight loss due to any digestive disorder. Tr. 37.

The ALJ found Johnson has the RFC to perform light work with additional limitations:

> [He] can have no exposure to pulmonary irritants such as dust, fumes, gases[,] chemicals, odors, etc., nor to humidity or temperature extremes. He can perform only frequent reaching, handling, grasping, feeling or finger [sic] with his left hand and perform no over the shoulder level reaching with the left arm. [He] requires additional bathroom breaks in addition to normal morning, lunch and afternoon breaks, of five minutes each hourly but not to exceed more than 10% of expected work time.

Tr. 37.

The ALJ found that Johnson's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but his

"statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" Tr. 38.

The ALJ further found, "An analysis of the objective medical evidence demonstrates that [Johnson] is capable of work activity consistent with the [RFC] finding." Tr. 38. The ALJ explained, "[Johnson's] allegations of debilitating gastrointestinal and breathing disorders are contradicted by mild findings from imaging, generally mild objective findings from physical examinations, evidence of exaggerated symptoms and high functioning activities of daily living that include independent self care." Tr. 38.

The ALJ added, "Imaging, diagnostic testing, and physical examination findings strongly support [Johnson's] ability to do work related activity, consistent with the [RFC] finding." Tr. 38.

The ALJ summarized diagnostic records:

Emergency room records dated March 15, 2019 indicate complaints of abdominal and chest pain, difficulty swallowing and vomiting, secondary to a reported 10-year history of esophageal [achalasia]. [Johnson] asserted his last esophageal dilation was 8 years prior to presentation (Exhibit 3F/3-4). Physical examination showed diffuse abdominal tenderness, soft, normoactive bowel sounds, and no pulsatile masses or bruits. No cardiac, respiratory, extremity, musculoskeletal or neurological deficits were evident (Exhibit 3F/7). Chest x-ray showed clear lung fields, with a prominence of the superior mediastinum, which may represent a tortuous vessel (Exhibit 3F/8). Barium swallow was consistent with esophageal obstruction at the distal esophagus near the gastroesophageal junction with no contrast passing into the stomach (Exhibit 3F/20). Abdominal CT compatible with achalasia of the esophagus with is distended with fluid with stenosis at the level of the gastroesophageal junction; and bullous emphysematous changes in both lungs, right greater than left, possible paraseptal emphysema. However, there was no findings of scleroderma in the lungs (Exhibit 3F/23). EGC of March 18, 2019 demonstrated food in the esophagus, which was

removed using a Roth net, esophagitis gastritis. Botox was injected to LES. Esophageal biopsies showed squamous mucosa with surface erosion, acute inflammation and numerous superficial fungal yeast suggestive of Candida. However, there was viral change or no malignancy. PAS stain highlights fungal yeast (see Exhibit 4F/2). [Johnson] was discharged home on March 18, 2019, in improved and stable condition. He was readmitted to the hospital in July 2019 for similar complaints, and treated for acute kidney injury/failure and achalasia of the esophagus. EGD showed atonic dilated proximal mid esophagus. The hypertonic GE junction/sphincter was dilated with a TTS balloon (Exhibits 4F, 5F, 9F, 10F/7, 10).

Tr. 38–39.

The ALJ summarized records from two doctors:

During consultative examination with Michael Rosenberg, M.D., in September 2019, [Johnson] reported having multiple esophageal dilations and Botox, with temporary improvement before symptoms recurrence. He reported vomiting with both[] liquids and solids, but having more difficulty with solids. [He] indicated his highest weight was 165 pounds, years ago, and that he has been losing weight, with worsening symptoms. He was 5'10" and weighed 144 pounds. [He] was in no acute distress. Gait was normal with no hand-held assistive devices. Squat was full. [He] needed no help changing or getting on/off examining table. Chest and lung evaluation showed normal AP diameter; clear lungs to auscultation; and no significant chest wall abnormality. Heart was within normal limits. [His] abdomen was soft with vague generalized upper abdominal pain. However, there was no evidence of peritoneal signs, hepatosplenomegaly, masses, or abdominal bruits. Bowel sounds were normal. Musculoskeletal, neurological and extremity evaluations were within normal limits, with intact dexterity, and 5/5 strength in bilateral upper and lower extremities and bilateral grip (Exhibit 7F/4)[.]

[Johnson] established care with James Belcher, M.D. in June 2020. Review of systems was positive for shortness of breath, chest pain and palpitations, abdominal pain and vomiting, and occasional back pain, but was otherwise negative. Physical examination showed [he] was in no acute distress, with normal appearance and no evidence of respiratory distress (Exhibit 9F/6). Treatment records from July 2020 indicate allegations of vomiting 15-20 times a day, which [he] stated occurred at any time, lasting for one hour to half the day, causing pain

8

(Exhibits 9F/5; 10F/11). [He] canceled pulmonary function study testing and failed to show for his scheduled appointment for July 13, 2020 (Exhibit 10F/11)[.].

Tr. 39.

The ALJ summarized records from a physician's assistant and an x-ray:

P.A., Karen Mikol, evaluated [Johnson] in September 2020. BMI was 20.38. However, he appeared well developed and well nourished. The heart was with normal rate and regular rhythm. Breath sounds and effort were normal. The abdomen was soft, not tender or distended, and with positive bowel sounds (Exhibit 10F/9). EGD dilation was planned for later in the week, with future scheduling of an esophageal manometry (Exhibit 10F/10). However, [Johnson] did not complete the recommended procedure (Exhibits 12F/6, 13F/6)[.]

Chest x-ray completed November 23, 2020 evidenced COPD with widening of the upper mediastinum (Exhibit 11F).

Tr. 39–40.

The ALJ summarized additional doctors' records:

[Dr. Rosenberg] examined [Johnson] on January 4, 2021. [He] was 5'11" and weighed 134 pounds. Vague upper abdominal pain was noted. However, the abdomen was soft without hepatosplenomegaly, masses or abdominal bruits. Strength was slightly diminished, 4+/5, in the bilateral upper and lower extremities. However, the remainder of the physical examination was within normal limits. [He] was in no acute distress. No shortness of breath was noted. Gait and stance were normal, without the use of an assistive device. Lungs were clear to auscultation and AP diameter was normal. Heart was with regular rate and rhythm, without murmur, gallop or rubs. Straight leg raise was negative bilaterally. Joints were stable. No sensory deficits were noted. There was no cyanosis, clubbing or edema in the extremities. Hand and finger dexterity was intact, with 5/5 grip strength bilaterally (Exhibit 14F).

During annual physical examination with Gianinna Folgarait, M.D., in July 2021, [Johnson] alleged a one-week history of left shoulder and left arm pain. [His] BMI was 20.1. The left shoulder was tender on palpation

9

with spasm, and pain on motion. However, the remainder of the examination was within normal limits. [He] was well-appearing, well-developed, well-nourished, and in no acute distress. Respiration rhythm and depth were normal; respiratory excursion was normal and symmetric; and lungs were clear to auscultation. Heart rate and rhythm, sounds, arterial and dorsalis pulses were normal. Murmurs were not heard and there was no evidence of edema or varicosity changes. Abdominal evaluation was normal for visual inspection and bowel sounds. There was no guarding, tenderness or masses. The liver and spleen were normal in size. Back, extremities and motor strength were normal. [Johnson] was referred to gastroenterology, pulmonology and orthopedics (Exhibit 15F/9).

[Johnson] was seen on November 12, 2021, for hospital follow up for achalasia. Since discharge on November 2, 2021, against medical advice, [his] noted [sic] improved dysphagia and swallowing. However, he reported continued vomiting, some stomach and chest pain, and some changes in voice over time with occasional hoarseness (Exhibit 17F/1-2, 13). Review of systems was otherwise negative, including no complaints of respiratory or musculoskeletal symptoms. BMI was 20.01 (Exhibit 17F).

Tr. 40.

The ALJ found that Johnson's "routine and conservative medical treatment history is inconsistent with his debilitating allegations." Tr. 40. The ALJ explained:

[Johnson] experiences frequent episodes of vomiting, secondary to a digestive disorder. He was treated with balloon insertion, most recently in July 2019 and Botox injections, in March 2019 and November 2021 (Exhibits 6F/73; 17F). However, the record does not document masses or obstructions, which required aggressive treatment. There is radiographic evidence of COPD. However, there is no indication [Johnson] followed up with treatment by a pulmonologist. There is evidence of complaints of left upper extremity pain. [Johnson] was referred to orthopedics, but there is no indication he followed up with recommended care. There is no indication he required emergency room treatment, that one would expect consistent with his alleged debilitating pain and limited functioning. Lastly, regarding his weight loss, [he] was not referred for nutrition counseling or a weight management specialist, nor is there indication he was instructed to use nutritional supplements.

10

[His] routine and conservative treatment strongly suggests that his symptoms may not have been as serious as has been alleged.

Tr. 40–41.

The ALJ continued:

[Johnson's] high functioning activities of daily living are inconsistent with his physical allegations of disability. However, there is no indication he is incapable of performing personal care or household chores, though [he] may require some assistance or breaks. He does not require an assistive device to stand or walk. There is no indication he exhibited any difficulty sitting during his examinations; or that he had difficulty gripping, grasping, fingering or lifting/reaching in all directions, as physical examinations documented 5/5 strength throughout and intact sensation. More importantly, he is able to perform personal care independently, prepare simple meals, use a microwave, complete simple chores, do light loads of laundry and light shopping, but may need some assistance secondary to his physical impairments (Exhibits 4E, 7F, 14F).

Although [Johnson's] impairments certainly caused some limitations, some of the abilities required in order to perform these activities are the same as those necessary for obtaining and maintaining employment. Even if [his] daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to [his] medical conditions, as opposed to other reasons, in view of the relatively benign medical evidence and other factors discussed in this decision. The medical evidence, and in particular, the clinical signs and objective evidence contained in imaging and diagnostic testing, treatment notes, physical examinations, and [Johnson's] high level of daily activities do not support limitations of function consistent with a complete inability to perform all work activity. Accordingly, [Johnson's] ability to participate in such activities undermines the persuasiveness of his allegations of disabling functional limitations.

Tr. 40–41.

The ALJ discussed medical opinions and prior administrative medical findings:

As for medical opinion(s) and prior administrative medical finding(s), the undersigned cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources. The undersigned has fully considered the medical opinions and prior administrative medical findings as follows:

The state agency medical consultant upon at the initial level [sic], [Johnson] was capable of a range of light work activity, with occasional postural limitations, but that he should avoid concentrated exposure to vibration, environmental irritants, and hazards (Exhibit 3A). The opinion is not fully persuasive. The opinion insofar as [Johnson] is capable of the physical exertional requirements of light work activity is persuasive, and well supported by the evidence of record. However, … with regard to [his] ability to perform postural activities and his environmental limitations are not persuasive. The opinion does not consider all of [his] limitations, including his digestive disorder and left upper extremity disorders. As such, [he] is more limited than previously assessed, as evidenced by treatment notes, physical and consultative examination findings.

Upon reconsideration, the medical consultant did not provide [an RFC] (Exhibit 6A)[.]

No specific [RFC] was noted in Exhibits 7F, 11F, and 14F [records from internal-medicine examinations]. However, the combination of the treating and examining medical evidence of record cited are supportive of the [RFC].

Tr. 41–42.

The ALJ concluded:

Based on the foregoing, the undersigned finds [Johnson] has the above [RFC] … assessment, which is supported by the longitudinal evidence of record. [Johnson's] COPD, left upper extremity disorders, and digestive disorders are account[ed] for by limiting him to a reduced range of light work, with no exposure to pulmonary irritants such as dust, fumes, gases[,] chemicals, odors, etc., nor to humidity or temperature extremes; only frequent reaching, handling, grasping, feeling, or finger[ing] with his left hand and perform no over the shoulder level reaching with the left arm; and permitting additional bathroom breaks in addition to

> normal morning, lunch and afternoon breaks, of five minutes each hourly but not to exceed more than 10% of expected work time.

Tr. 42.

At step four, the ALJ found Johnson has no past relevant work. Doc. 42.

At step five, the ALJ found Johnson can perform jobs existing in significant numbers in the national economy, including "marker," "cashier II," and "router." Tr. 42–43 (capitalization and a comma omitted).

Thus, the ALJ found Johnson is not disabled. Tr. 43.

Johnson submitted post-hearing evidence. Tr. 50–70. The evidence includes hospital records showing treatment for left-side pain and vomiting without chills, back pain, fever, chest pain, or shortness of breath and with normal pulmonary efforts, mild tachypnea (rapid breathing), and mostly normal findings, Tr. 52, 55–58; notes of chest x-rays showing pleural effusion and a distended fluid-filled esophagus; Tr. 58, 60, 69; and notes of a CT scan showing "moderate findings of paraseptal emphysema" and pleural fluid, Tr. 61.

The Appeals Council denied review. Tr. 1–3. The Appeals Council advised Johnson, "You submitted medical records … dated December 5, 2021 to December 22, 2021 …. We find this evidence does not show a reasonable probability that it would change the outcome of the decision." Tr. 2.

## III.   Standard of Review

A court's review of a final decision of the Social Security Administration is limited to whether substantial evidence supports the factual findings and

whether the correct legal standards were applied. 42 U.S.C. § 405(g); *see also* 42 U.S.C. § 1383(c)(3) (incorporating § 405(g)); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoted authority omitted). The "threshold for such evidentiary sufficiency is not high." *Id.* Under this standard of review, a court may not reweigh the evidence or substitute its judgment for that of the Acting Commissioner. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## IV.   Law & Analysis

Johnson argues substantial evidence does not support the RFC findings, the ALJ erred by failing to develop the record, and the Appeals Council erred by failing to consider post-hearing treatment.

### A.   *Substantial evidence supports the RFC findings.*

Johnson argues the ALJ erred by finding that jobs he can perform exist in significant numbers in the national economy, but in essence he argues substantial evidence does not support the ALJ's RFC findings because he requires more restroom breaks and days off work than the RFC includes. *See* Doc. 17 at 11–15.

An ALJ must consider all of a claimant's symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence. 20 C.F.R. § 416.929(a). A claimant's "statements about [his] pain or other symptoms will not alone establish" disability. *Id.* "There must be objective medical evidence from an acceptable

medical source that shows [the claimant has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence …, would lead to a conclusion that [the claimant is] disabled." *Id.*

Here, substantial evidence supports the ALJ's findings that Johnson can perform light work with additional limitations and jobs he can perform exist in significant numbers in the national economy. *See* Tr. 37, 42–43. The evidence includes treatment records indicating achalasia with difficulty swallowing, pain, and vomiting, Tr. 447–48; treatment records indicating an absence of cardiac, respiratory, extremity, musculoskeletal, or neurological deficits, Tr. 449, 451; treatment records indicating a normal gait, full squat, and no need for help changing or getting on or off the examining table, Tr. 647–49; physical evaluations within normal limits, with intact dexterity and full strength, Tr. 724–29, 649, 660, 673, 697–98; treatment records indicating no acute distress, a normal appearance, and no evidence of respiratory distress, Tr. 705–09; records showing Johnson canceled testing, skipped appointments, and did not complete recommended treatment, Tr. 659, 673–75, 685, 693; some records indicating clear lungs and no shortness of breath and other records indicating some fluid buildup and mild shortness of breath, Tr. 708; records indicating Johnson appeared well developed, well nourished, and in no acute distress, Tr. 673; records indicating COPD but an absence of treatment for it, Tr. 40; and Johnson's own reports of his ability to perform personal care, prepare meals, complete simple chores, and do light laundry and light shopping, Tr. 41, 299, 648, 697.

Johnson states, "There is substantial evidence in the record that [he] suffers from achalasia," Doc. 17 at 11, which he describes at length, Doc. 17 at

4–11. The ALJ found achalasia is a severe impairment and accounted for achalasia in the RFC findings by including limitations for extra restroom breaks and spending ten percent of the time off task. Tr. 35, 37. Substantial evidence supports the ALJ's RFC findings, and the Court may not reweigh the evidence. *See Moore*, 405 F.3d at 1211.

Johnson complains that the ALJ failed to include in the RFC the limitation that he would be absent from work more than one day a month, observing that the VE testified being absent from work more than one day a month would preclude work. Doc. 17 at 12–13; *see also* Tr. 90 (hearing testimony). Substantial evidence, as described, supports excluding a greater absentee limitation from the RFC.

Johnson argues his "need for breaks is unlike a typical 'bathroom' break" and points to his testimony that his breaks are frequent and lengthy. Doc. 17 at 13–14. The ALJ was not required to accept his testimony; he was required evaluate the statements for consistency with the medical and other evidence, which he did. He explained the "allegations of debilitating gastrointestinal and breathing disorders are contradicted by mild findings from imaging, generally mild objective findings from physical examinations, evidence of exaggerated symptoms and high functioning activities of daily living that include independent self care." Tr. 38.

Johnson cites *Dempsey v. Commissioner of Social Security*, 454 F. App'x 729 (11th Cir. 2011). Doc. 17 at 13. In *Dempsey*, the ALJ stated he had given "significant weight" to a doctor's opinion but discussed only part of the opinion and included a finding inconsistent with the part of the opinion he did not discuss. 454 F. App'x at 733. The Eleventh Circuit reversed, stating, "Without a clear explanation of the ALJ's treatment of [the] opinion, we cannot

16

determine whether the ALJ's ultimate decision on the merits was rational and supported by substantial evidence." *Id. Dempsey* is inapposite. Johnson does not argue the ALJ failed to adequately explain how he considered the evidence. Instead, he appears to argue more generally that the evidence does not support the RFC findings. As discussed, substantial evidence supports the RFC findings.

Johnson complains the ALJ found that "[t]here is no indication he required emergency room treatment" even though he went to the emergency room multiple times. Doc. 17 at 14; *see also* Doc. 19 at 5 (arguing the statement was general and not specific to arm pain). The full context is this: "There is evidence of complaints of left upper extremity pain. [He] was referred to orthopedics, but there is no indication he followed up with recommended care. There is no indication he required emergency room treatment, that one would expect consistent with his alleged debilitating pain and limited functioning." Tr. 40. Elsewhere in the decision, the ALJ specifically refers to emergency-room records. *See* Tr. 38. The ALJ apparently meant that Johnson had never gone to the emergency room for his left-arm pain, which the record supports.

Finally, Johnson argues the ALJ "failed to build a logical bridge from the significant evidence … and obvious limitations caused by achalasia … which certainly would require absenteeism and significant break time …. Therefore this matter requires remand as it is clear the RFC does not properly account for [Johnson's] digestive and upper extremity disorders." Doc. 17 at 15. He further describes his achalasia and cites *Flentroy-Tennant v. Astrue*, No. 3:07-cv-101-TEM, 2008 WL 876961, at *8 (M.D. Fla. Mar. 27, 2008). Doc. 17 at 14–15. In *Flentroy-Tennant*, this Court cited the Northern District of Illinois for the proposition that "[a]n ALJ is required to build an accurate and logical

bridge from the evidence to his or her conclusion." 2008 WL 876961 at *8 (citing *Baker v. Barnhart*, No. 03 C 2291, 2004 WL 2032316, at *8 (N.D. Ill. Sept. 9, 2004). Neither *Flentroy-Tennant* nor *Baker* binds this Court. In any event, the ALJ thoroughly explained his consideration of the evidence and connected the RFC findings to medical findings and Johnson's reports of his activities. To the extent Johnson asks the Court to reweigh the evidence, the Court may not do so.

In short, substantial evidence supports the RFC finding. Reversal on this ground is unwarranted.

**B.**   ***Johnson shows no prejudice in the ALJ's failure to obtain more evidence.***

Johnson argues the ALJ erred by failing to develop the record regarding his COPD and depression.

Regarding COPD, the record includes evaluations showing Johnson's lungs had a normal anteroposterior diameter and were "clear to auscultation" with "[n]o significant chest wall abnormality," Tr. 649, 698; evaluations showing Johnson had normal breath sounds and effort, Tr. 674; separate evaluations showing Johnson was short of breath but not in respiratory distress, Tr. 660; an x-ray showing COPD, Tr. 678; a pulmonology referral, Tr. 710; and records showing Johnson canceled his pulmonary function test, Tr. 675.

Regarding depression, the record includes evaluations showing Johnson was negative for depression and had a normal mood, affect, and behavior, Tr.

451, 649, 659, 673, 708; a mental-status screen at a consultative examination[3] showing "[n]o evidence of impaired judgment," good memory and eye contact, "orient[ation] in all spheres," and appropriate interaction with the examiner, Tr. 649; a treatment record showing he reported a history of depression related to his inability to eat but denied suicidal or homicidal ideation and had never been treated for depression, Tr. 705; and a statement by his hearing representative that he has had no formal mental-health treatment, Tr. 79.

The ALJ has a duty to develop a full and fair record. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). But the claimant bears the burden of establishing disability and must produce evidence to support the claim. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). If the ALJ fails to fulfill his duty to fully develop the record, remand is warranted if "the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995) (internal quotation marks omitted). "In other words, there must be a showing of prejudice before [a court] will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [ALJ] for further development of the record." *Mosely v. Acting Comm'r of Soc. Sec. Admin.*, 633 F. App'x 739, 742 (11th Cir. 2015) (internal quotation marks omitted). "Prejudice requires a showing that the ALJ did not have all of the relevant evidence before him in the record … or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Id.*

---

[3] If a claimant's medical sources cannot or will not provide sufficient evidence for a disability determination, the Social Security Administration may ask the claimant to undergo a physical or mental consultative examination at the administration's expense. 20 C.F.R. § 416.917. The administration generally "will not request a consultative examination until [it] ha[s] made every reasonable effort to obtain evidence" from the claimant's medial sources. *Id.* § 416.912(b)(2).

Johnson argues the ALJ failed to develop the record concerning his COPD because the record contains no CT scan and no medical opinion relating to the impact of his COPD. Doc. 17 at 20–21; *see also* Doc. 19 at 9. He cites no authority requiring a CT scan or medical opinion on COPD. In any event, the ALJ included COPD as a severe impairment and discussed the treatment records relating to it. Tr. 35, 40. The ALJ explicitly accounted for COPD by limiting Johnson to light work with no exposure to pulmonary irritants, Tr. 42, and Johnson does not argue his COPD limits him more. Johnson fails to show prejudice.

In the initial brief, Johnson's only argument that the ALJ failed to develop the record concerning his depression is a statement to that effect in the summary of the arguments. *See* Doc. 17 at 3. He also includes a section titled "Depression" and describes evidence of depression without including any argument. Doc. 17 at 21–22. In the reply brief, he argues the record lacks a medical opinion interpreting the severity of his depression. Doc. 19 at 10. Because the initial-brief argument is conclusory and the reply-brief argument is new, Johnson fails to properly raise the issue. In any event, the record includes multiple documents related to depression—including a mental-status examination—the ALJ explicitly considered Johnson's depression and identified no need for further evidence, and Johnson does not allege his depression limits him. Johnson fails to show prejudice.

In the summary of his arguments, Johnson also states the ALJ failed to develop the record as to his "post-hearing emergency medical treatment for a collapsed lung and newly discovered emphysema," Doc. 17 at 3–4, but his later discussion of the post-hearing medical treatment is limited to his argument that the Appeals Council failed to consider it, *see* Doc. 17 at 16–20. Because the

argument that the ALJ failed to develop the record regarding post-hearing treatment is conclusory and undeveloped, Johnson fails to properly raise the issue, and the Court need not consider it. In any event, Johnson fails to explain how the record is underdeveloped or how he is otherwise prejudiced.

In short, Johnson fails to show prejudice in failing to obtain more evidence. Reversal on this ground is unwarranted.

## C. *The Appeals Council did not err in its treatment of the new evidence.*

Johnson argues the Appeals Council erred by failing to consider post-hearing evidence. Doc. 17 at 16–20.

"[A]lthough the Appeals Council has the discretion to deny review of an ALJ's decision, it must consider new, material, and chronologically-relevant evidence submitted by the claimant." *Elkins v. Comm'r, Soc. Sec. Admin.*, 774 F. App'x 545, 546 (11th Cir. 2019).

If "the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision," the Appeals Council must review the case. 20 C.F.R. § 416.1470(a)(5).

"When the Appeals Council accepts additional evidence, considers the evidence, and then denies review, it is not required to provide a detailed rationale for denying review." *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1321 n.5 (2015) (cleaned up); *see also Medders v. Soc. Sec. Admin., Comm'r*, No. 21-11702, 2022 WL 222719, at *2 (11th Cir. Jan. 26, 2022) (observing the Appeals Council is "not required to give a detailed rationale for

why each piece of new evidence submitted did not change the ALJ's denial of benefits").

The parties do not dispute that the post-hearing evidence is new, material, and chronologically relevant. *See* Doc. 17 at 16–20 (Johnson's initial brief); Doc. 18 at 17–18 (Acting Commissioner's brief); Doc. 19 at 7–9 (Johnson's reply brief).

The Appeals Council reviewed the additional evidence, determined there was no reasonable probability it would change the outcome of the decision, and declined to review the case. Tr. 1–2.

Johnson describes some of the post-hearing evidence and argues "[h]e has shown that there is a reasonable probability that the additional evidence would change the outcome of the decision in that it provides irrefutable medical evidence of three new aspects or effects of [his] achalasia[.]" Doc. 17 at 16–18. He quotes the ALJ's finding that the objective evidence and his "high level of daily activities do not support limitations of function consistent with a complete inability to work," and adds, "Whatever the validity of these characterizations of the record, as it stood prior to [the date of the first record in the additional evidence], they do not describe the … evidence" in the new records. Doc. 17 at 20. He points to specific findings.

The Acting Commissioner also describes the evidence and observes Johnson had normal pulmonary effort, had no abdominal guarding or distention, and was stable and felt better after treatment. Doc. 18 at 18; *see also* Tr. 56–58 (treatment records).

To the extent Johnson intends to argue the Appeals Council erred by failing to review the case based on the additional evidence, he fails to show reversible error. As the Acting Commissioner persuasively argues, the additional records show he "had limitations," which "is consistent with the ALJ's decision that found [he] had severe impairments that limited him to a reduced range of light work. The Appeals Council thus properly declined review because [he] failed to show there was a reasonable possibility that this new evidence would change the outcome of the ALJ's unfavorable decision." Doc. 18 at 18.

In the reply brief, Johnson argues that the additional evidence reflects "the worsening severity" of his achalasia. Doc. 19 at 7–8. He does not address the otherwise normal findings, lack of distress, or lack of significant abnormalities. Doc. 19; *see also* Tr. 55–70 (additional evidence). Even if the records suggest his condition was worsening, he fails to show a reasonable probability the new evidence would change the outcome of the decision.

Johnson argues the Acting Commissioner failed to respond to his assertions that the new evidence was inconsistent with the ALJ's conclusions. Doc. 19 at 8–9. But he fails to show the new evidence is inconsistent with the ALJ's conclusions. Any failure by the Acting Commissioner to specifically address the argument does not render the argument persuasive.

Thus, Johnson fails to show error in the Appeals Council's treatment of the new evidence. Reversal on this ground is unwarranted.

**D.     Consideration of the arguments in the reply brief is unwarranted and, in any event, the arguments are unpersuasive.**

In the reply brief, Johnson raises new arguments. Doc. 19. Specifically, he states he "first argued within the [o]pening [b]rief that the ALJ did not provide an adequate explanation in support of [the] finding [he] was capable of performing a reduced range of light work." Doc. 19 at 2 (citing Doc. 17 at 12). This argument is not clear from his initial brief.

Arguments raised for the first time in a reply brief are considered abandoned. *See Adderly v. Comm'r of Soc. Sec.*, 736 F. App'x 838, 839 n.1 (11th Cir. 2018) (finding arguments abandoned on this basis); *see also Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir. 2003) ("Because [the appellant] raises [an] argument for the first time in his reply brief, it is not properly before us."). In an adversarial system, raising arguments for the first time in a reply brief is unfair because the opposing side has no opportunity to address them. The new arguments warrant no consideration.

Even if the Court considers the arguments, reversal is unwarranted.

The ALJ must state the grounds for his decision with enough clarity to enable a court to conduct meaningful review. *Owens v. Heckler*, 748 F.2d 1511, 1514–15 (11th Cir. 1984). "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision … is not a broad rejection which is not enough to enable [the court] to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (cleaned up). An RFC finding need not be based on a medical opinion if the finding is supported by substantial evidence. *See Borges v. Comm'r of Soc. Sec.*, 771 F. App'x 878, 882 (11th Cir. 2019) ("[T]here need not be medical evidence

contradicting [opinions the ALJ discounted], so long as the ALJ's RFC assessment is supported by any relevant evidence in the record.").

Here, the ALJ stated the grounds for his decision with enough clarity for the Court to conduct meaningful review. He thoroughly discussed Johnson's medical records and the medical consultants' findings. *See* Tr. 38–42. He explained Johnson's "routine and conservative medical treatment history" and daily activities are "inconsistent with his debilitating allegations." Tr. 40–41. He considered Johnson's impairments and explained the limitations in the RFC account for them.

Johnson adds, "[W]ithout a citation to any part of the decision in which the ALJ actually explained how the evidence supported the RFC that the ALJ would later adopt in a meaningful discussion, the [Acting Commissioner] cannot now provide her own supplemental reasoning in effort to support such determination."[4] Doc. 19 at 3. He argues, "This is particularly true regarding the ALJ's limitations concerning [his] 10% off-task time and upper extremity limitations, which were neither supported by any opinion source or explanation by which a subsequent reviewer could consider in determining whether the ALJ's decision was supported by evidence." Doc. 19 at 3. He acknowledges that an "ALJ need not match [the] RFC to any medical opinion," but argues the Acting Commissioner's "argument does nothing to overcome the established precedent … prohibiting the ALJ from substituting his own judgment for that [of] a medical professional." Doc. 19 at 3.

---

[4]The Acting Commissioner argues substantial evidence supports the ALJ's decision and cites the evidence. Doc. 18 at 6–14.

Johnson fails to explain the argument that the ALJ substituted his judgment for a medical professional's. He cites no authority requiring an ALJ to connect a time-off-task limitation to specific medical evidence or provide his precise calculations. As explained, an ALJ need not refer to every piece of evidence as long as the decision "is not a broad rejection which is not enough to enable [the court] to conclude that the ALJ considered [the claimant's] medical condition as a whole." *See Dyer*, 395 F.3d at 1211 (quoted). Here, the ALJ provided enough explanation that the Court can conclude he considered Johnson's medical condition as a whole. Johnson fails to show prejudice.

## V.    Recommendation

Because substantial evidence supports the findings and the ALJ and the Appeals Council applied the correct legal standards, the undersigned recommends **affirming** the Acting Commissioner's decision and **directing** the clerk to enter judgment for the Acting Commissioner and against Phillip Johnson and close the file.

## VI.    Deadline for Objections and Responses to Objections

"Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the … recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the recommendations alters review by the district judge and the United States

Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. See Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1.

**Entered** in Jacksonville, Florida, on July 31, 2023.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:      The Honorable Sheri Polster Chappell
        Counsel of record

27